JS 44 (Rev. 12/07) (cand rev 1-16-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS
LORIE GARLICK

### DEFENDANTS
COMPASS VISION, INC. and NATIONAL MEDICAL SERVICES, INC. D/B/A NMS LABS and DOES 1 through 20

(b) County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)

Steve S. Kane, THE KANE LAW FIRM
402 West Broadway, Suite 400
San Diego, California 92101
(619) 446-5680

Attorneys (If Known)

Catherine A. Salah, Gordon & Rees LLP, 275 Battery Street, Suite 2000
San Francisco, CA 94111 (Compass Vision Inc.)
Christian Green, Law Offices of Samuel G Grader, 1860 Howe Avenue, Suite 350, Sacramento, CA 95825 (National Medical Services)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [x] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [x] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane / [ ] 362 Personal Injury— Med. Malpractice | [ ] 620 Other Food & Drug | [ ] 423 Withdrawal 28 USC 157 | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability / [ ] 365 Personal Injury— Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881 |  | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander / [ ] 368 Asbestos Personal Injury Product Liability | [ ] 630 Liquor Laws | **PROPERTY RIGHTS** | [ ] 450 Commerce |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | [ ] 640 R.R. & Truck | [ ] 820 Copyrights | [ ] 460 Deportation |
| [ ] 151 Medicare Act | [ ] 340 Marine / **PERSONAL PROPERTY** | [ ] 650 Airline Regs. | [ ] 830 Patent | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans) | [ ] 345 Marine Product Liability / [ ] 370 Other Fraud | [ ] 660 Occupational Safety/Health | [ ] 840 Trademark | [ ] 480 Consumer Credit |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle / [ ] 371 Truth in Lending | [ ] 690 Other |  | [ ] 490 Cable/Sat TV |
| [ ] 160 Stockholders' Suits | (circled) 355 Motor Vehicle Product Liability / [ ] 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | [ ] 810 Selective Service |
| [ ] 190 Other Contract |  | [ ] 710 Fair Labor Standards Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/Exchange |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal Injury / [ ] 385 Property Damage Product Liability | [ ] 720 Labor/Mgmt. Relations | [ ] 862 Black Lung (923) | [ ] 875 Customer Challenge 12 USC 3410 |
| [ ] 196 Franchise |  | [ ] 730 Labor/Mgmt. Reporting & Disclosure Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | [ ] 740 Railway Labor Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 441 Voting / [ ] 510 Motions to Vacate Sentence | [ ] 790 Other Labor Litigation | [ ] 865 RSI (405(g)) | [ ] 892 Economic Stabilization Act |
| [ ] 220 Foreclosure | [ ] 442 Employment / Habeas Corpus: | [ ] 791 Empl. Ret. Inc. Security Act |  | [ ] 893 Environmental Matters |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/Accommodations / [ ] 530 General |  | **FEDERAL TAX SUITS** | [ ] 894 Energy Allocation Act |
| [ ] 240 Torts to Land | [ ] 444 Welfare / [ ] 535 Death Penalty |  | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 895 Freedom of Information Act |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment / [ ] 540 Mandamus & Other | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 900 Appeal of Fee Determination Under Equal Access to Justice |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other / [ ] 550 Civil Rights | [ ] 462 Naturalization Application |  | [ ] 950 Constitutionality of State Statutes |
|  | [ ] 440 Other Civil Rights / [ ] 555 Prison Condition | [ ] 463 Habeas Corpus – Alien Detainee |  |  |
|  |  | [ ] 465 Other Immigration Actions |  |  |

## V. ORIGIN (Place an "X" in One Box Only)
- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):

Brief description of cause:
Negligence and recklessness in promoting faulty EtG test; 28 USC 1332(a) - diversity jurisdiction

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
- DEMAND $
- CHECK YES only if demanded in complaint:
- JURY DEMAND: [ ] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2) (PLACE AND "X" IN ONE BOX ONLY)
- [x] SAN FRANCISCO/OAKLAND
- [ ] SAN JOSE

DATE 8/27/08   Aug. 27, 2008

SIGNATURE OF ATTORNEY OF RECORD

Steve S. Kane, Esq. (SBN 061670)
THE KANE LAW FIRM
402 West Broadway, Suite 400
San Diego, CA 92101
Telephone: (619) 446-5680
skane@thekanelawfirm.com
Attorney for Plaintiff

Norman Perlberger, Esq.
Eliot H. Lewis, Esq.
POMERANTZ PERLBERGER & LEWIS LLP
21 South 12th Street, 7th Floor
Philadelphia, PA 19107
Telephone: (215) 569-8866
nperlberger@ppl-law.com
ehlewis@ppl-law.com
Attorneys in Pro Hac Vice pending for Plaintiffs

FILED
AUG 28 2008
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| LORIE GARLICK, | : | CIVIL ACTION NO. |
| --- | --- | --- |
| Plaintiff | : | COMPLAINT |
| vs. | : | CV 08 4118 EDL |
| COMPASS VISION, INC. And NATIONAL MEDICAL SERVICES, INC. D/B/A NMS LABS | : | JURY TRIAL DEMANDED |
| Defendants | : | |

## COMPLAINT

Plaintiff, by way of Complaint against Defendants, upon information and belief, allege as follows:

### PARTIES

1. Plaintiff, **LORIE GARLICK** ("**DR. GARLICK**"), is a citizen and resident of California, residing at 7557 Kilarney Lane, Apt. 296, Citrus Heights, CA 95610.

2. Defendant, **COMPASS VISION, INC.** ("**COMPASS**") is a corporation with its principal place of business in Oregon at SW Town Center Loop E, Wilsonville, Oregon 97070. It has transacted business in California, including the business that gives rise to the cause of action at issue.

COMPLAINT                                                                                          1

3. Defendant Compass is a third party administrator ("TPA"), specializing, inter alia, in the design, implementation, and management of drug and alcohol testing programs, including the collection of urine samples.

4. On information and belief defendant Compass contracted with the California State Board of Pharmacy, through Maximus, Administrator of the California pharmacists' recovery programs, to be the TPA administering drug and alcohol testing of pharmacists, including the testing of the plaintiff in the Northern District of California.

5. Defendant NATIONAL MEDICAL SERVICES, INC. D/B/A NMS LABS ("NMS") is a corporation with its principal place of business in Pennsylvania at 3701 Welsh Road, Willow Grove, PA 19090. NMS also has lab testing facilities and offices throughout the United States. It has transacted business in California, including the business that gives rise to the cause of action at issue.

6. On information and belief defendant NMS through defendant Compass contracted with the California State Board of Pharmacy, through Maximus, to do EtG (ethyl glucuronide) testing of health care providers, including the plaintiff, who is a pharmacist.

**JURISDICTION AND VENUE**

7. Jurisdiction in this action is based upon diversity of citizenship, 28 U.S.C. Section 1332 (a), and that damages for plaintiff exceed, exclusive of interest and costs, the sum of seventy-five thousand ($75,000.00) dollars.

8. Venue lies in the Northern District of California as the plaintiff resides therein and the defendants are transacting substantial business in this District.

**OPERATIVE FACTS**

9. As a TPA, Compass contracts its services to various state and municipal agencies, as well as state licensure boards. At all relevant times pertinent to this action Compass provided TPA services to the California State Board of Pharmacy. The Board administers, inter alia, the licensing privileges of pharmacists.

10. At all times relevant hereto, it is believed and therefore averred that Compass and NMS provided to the Board the results and interpretation of the results of EtG alcohol testing

COMPLAINT   2

upon pharmacists as contracted through Compass.

11. Because of the sensitive nature of their positions with respect to patient care, California pharmacists, who have an admitted history of addiction, are allowed to enter into Diversion Program Recovery Contracts with Maximus, by which they agree to submit to random urine analysis to document a drug-free condition in a known "zero-tolerance" environment.

12. Random drug screening is not a requirement for pharmacists in California, unless they have an admitted history of addiction, and have voluntarily entered into an agreement as part of continued employment or are placed on probation.

13. "EtG" stands for ethyl glucuronide, a metabolite of alcohol, and was reported by Gregory Skipper, M.D. ("Dr. Skipper") and Friedrich Wurst, M.D., in November 2002 at an international meeting of the American Medical Society, to provide proof of alcohol consumption as much as 5 days after drinking an alcoholic beverage, well after the alcohol itself had been eliminated from the body.

14. In 2003, because of these and other reportedly remarkable results (e.g., positive findings, confirmed by admissions by the tested individuals, after traditional urine tests had registered negative), EtG testing began in the United States.

15. On information and belief, Compass and NMS became leading proponents of EtG testing, and starting in 2003, published statements and claims promoting the absolute reliability and validity of EtG in detecting alcohol abuse, in promotional materials, on websites, in published articles and in statements in their sales personnel, including promoting EtG testing as the "gold standard".

16. On information and belief, initially, the defendants, Compass and NMS, determined and established a reporting limit or cut off of 250 ng/ml at or over which EtG test results would be reported as "positive" for drinking alcohol. This was later changed by the defendants to 500 ng/ml.

17 It is believed and therefore averred that on laboratory reports indicating the results of EtG testing, issued at relevant times to this action, National Medical Services included the statement that "any value above 250 ng/ml indicates ethanol consumption".

18. It is believed and therefore averred that Compass Vision claims that any EtG test result of 500 ng/ml and above conclusively proved intentional consumption of an alcoholic beverage, and that Compass sponsored a paper with that claim by Dr. Martha Brown, its employee and Medical Review Officer.

19. It is believed and therefore averred that based on such unequivocally conclusive statements and claims by the defendants, California instituted EtG testing and the State Board of Pharmacy, through Maximus, became a signatory to a service contract with Compass as its TPA and NMS as a testing lab facility for EtG testing programs.

20. It has come to light about EtG testing that:
   a. Many ordinary products, including the omnipresent Purell sanitizer and other hand sanitizers used in hospitals throughout the country, contain ethanol;
   b. The use or exposure to such products - known collectively as "incidental" or "involuntary" - could result in positive test results, since they all would metabolize as ethyl glucuronide;
   c. The cut offs of 250 ng/ml and 500 ng/ml are arbitrary standards since incidental exposure to ethanol-containing products could show up at levels well above these levels;
   d. The published state of scientific knowledge, going as far back as March 2004, included the information set forth in subparagraphs a-c above.

21. This has not deterred the $4 billion-a-year industry, and the defendants, it is believed and therefore averred, solely due to a motive of profits, a) continue to promote the EtG test as valid, b) have not established a non arbitrary cut off; and/or, c) have not repudiated the test to the licensing boards and agencies.

22. On August 12, 2006, The Wall Street Journal published a front-page article, titled "A Test for Alcohol - And Its Flaws."

///
///

COMPLAINT                                                                                          4

23. Quoting Dr. Skipper, among others, the article includes:

"Little advertised, though, is that EtG can detect alcohol even in people who didn't drink. Any trace of alcohol may register, even that ingested or inhaled through food, medicine, personal-care products or hand sanitizer."

"The test 'can't distinguish between beer and Purell' hand sanitizer, says H. Westley Clark, director of the Federal Substance Abuse and Mental Health Services Administration... ' When you're looking at loss of job, loss of child, loss of privileges, you want to make sure the test is right", he says..."

"Use of this screen has gotten ahead of the science,' says Gregory Skipper.."

24. In a February 2007 article in the magazine "New Scientist," Dr. Skipper is quoted that:

"... there is not yet an agreed threshold concentration that can be used to separate people who have been drinking from those exposed to alcohol from other sources. Below 1000 nanograms of EtG per millititre of urine is probably 'innocent', and above 5000 booze is almost certainly to blame. In between there is a "question zone..."

25. Upon information and belief, representative of Compass and NMS continue to deny and challenge these warnings, insisting that the tests are accurate and reliable measurements based on alleged scientific research.

26. On September 28, 2006, SMHSA, a federal agency that is part of the U.S. Department of Health and Human Resources, issued an Advisory, which on the first page contained a "grey box" warning, as follows:

"Currently, the use of an EtG test is determining abstinence lacks sufficient proven specificity for use as primary or sole evidence that an individual prohibited from drinking, in a criminal justice or a regulatory compliance context, has truly been drinking. Legal or disciplinary action based solely on a positive EtG, or other test discussed in this *Advisory* is inappropriate and scientifically unsupportable at this time. These tests should currently be considered as potential valuable clinical tools, but their use in forensic settings is premature."

27. Defendants have refused to follow the SAMHSA Advisory and continue to utilize an arbitrary cutoff, and support their "positive" findings to the Board (and other licensing and law enforcement agencies) in the face of disciplinary action against the tested individuals.

28. Defendants, by promoting, advertising, marketing, selling, and/or contracting with the licensing board, and/or designing, implementing, and managing the drug and alcohol testing

COMPLAINT                                                                                           5

1  program, and/or collecting the urine samples and/or utilizing, reporting and interpreting the EtG
2  test to allegedly establish that the plaintiff consumed an alcoholic beverage, had a duty to use a
3  reasonable degree of care to avoid erroneous test results.

4      29.    Plaintiff, as a pharmacist, was an intended test subject and defendants knew that
5  her license, occupation and reputation would be in jeopardy if she tested positive.

6      30.    Plaintiff by entering into her Stipulated Settlement Agreement, both for
7  rehabilitative and occupational reasons, relied on the validity of the tests to which she subjected
8  herself - with the goal that she could provide laboratory evidence of her abstinence.

9      31.    Because of the obvious, foreseeable, serious and devastating consequences
10 (including, but not limited to damage to plaintiff's reputation, credibility and emotional well
11 being) of reporting that the results were positive (within cut offs established by the defendants),
12 defendants had to use a reasonable degree of care to avoid erroneous test results to the
13 foreseeable test subjects, including the plaintiff.

14     32.    Instead, upon information and belief, defendants acted negligently and/or
15 recklessly by:

16        a.    Marketing their tests without conducting adequate scientific or medical
17            studies;

18        b.    Establishing cut offs over which test results would be reported as
19            "positive" that were arbitrary and scientifically unreliable and invalid';

20        c.    Promoting the EtG test with unsupported and false statements that a
21            positive EtG test would unequivocally establish that the subject individual
22            had consumed alcoholic beverages;

23        d.    Publishing warnings that the failure to conduct such a test would be
24            negligence on the part of an employer or licensing board;

25        e.    Falsely asserting that the EtG test was the "gold standard" in ferreting out
26            former alcoholics or drug users who were resuming or beginning to engage
27            in prohibited alcoholic consumption in occupations requiring a "zero
28            tolerance";

    f.    Falsely asserting that EtG is not detectable in the urine unless an alcoholic beverage has been consumed, thereby concealing that incidental or involuntary exposure or consumption of products containing alcohol could result in positive findings;

    g.    Failing and refusing to re-evaluate and re-set cut off limits at levels that were scientifically sound and reliable markers for detecting the prohibited activity of alcoholic beverage consumption, and excluding other causes for their results;

    h.    Failing to heed the warnings or cautionary advisories issued by Dr. Skipper, SAMHSA and others - that the cut off levels were unreliable and arbitrary, and that incidental use could trigger positive results at levels at or above the cut offs - and, instead, denying publicly and maintaining the warnings were insufficient to discredit the EtG test and its cut off limits;

    I.    Failing to protect the plaintiff from foreseeable substantial harm in the form of disciplinary and punitive measures, when their EtG test systems were employed and relied upon for their accuracy and reliability;

    j.    Utilizing, reporting and interpreting the EtG results of plaintiff to assert that plaintiff was violating her recovery by intentionally drinking alcoholic beverages.

33. It was foreseeable to the defendants that false positive EtG results would severely damage the reputation and credibility of pharmacists, like the plaintiff, who were maintaining their recovery from addiction, and that the apprehension of further false positives and the damage to their reputation would cause severe anxiety and emotional distress to such professionals, who had spent years in education to gain the right to practice their chosen profession, and who had in actuality maintained their recovery by overcoming addictions in order to reestablish their reputations as competent professionals.

///
///

## COUNT I

## LORIE GARLICK v. COMPASS VISION & NMS

34. Plaintiff Lorie Garlick incorporates by reference paragraphs 1-33 as if set forth fully hereunder:

35. In or about, October 13, 2006, Lorie Garlick, Pharm. D., entered into a Stipulated Settlement Agreement with the California State Board of Pharmacy and was readmitted to the Pharmacy Recovery Program. This allowed Dr. Garlick to practice pharmacy under probation while submitting to random urine testing.

36. At all relevant times to this action, including the time in which she participated under the Stipulated Settlement Agreement, while working as a pharmacist, Dr. Garlick maintained her recovery and sobriety, denied intentionally drinking any alcoholic beverages, denied any relapse and did not drink any alcoholic beverage.

37. At all relevant times after October 13, 2006, Dr. Garlick completely complied with all of the aspects of her program, including attending meetings, and did her job soberly and competently. She also took antabuse which would make her ill if she drank alcohol in order to refuse any possible false positive EtG tests.

38. After nearly four years of working hard to maintain her recovery and regain her professional reputation, on or about March 10 and March 30, 2007, Dr. Garlick submitted to random urine analyses collected by Compass and performed by NMS.

39. Dr. Garlick received notice of positive results of 330 and 700 ng/ml on the EtG tests, as reported and interpreted by defendants Compass Vision and NMS, despite the fact that she had not drank any alcoholic beverage, and suffered injury when she was not allowed to work for more than one week in April 2007.

40. On or about December 17, 2007, Dr. Garlick who, by that time, was mandated to take daily doses of antabuse, which she faithfully took, again submitted to a random urine analysis collected by Compass and performed by NMS.

41. This test was reported and interpreted by both defendants as proof she had drank alcohol and on December 24, 2007, Dr. Garlick was suspended from working as a pharmacist

COMPLAINT                                                                                              8

1  from December 24, 2007 through March 13, 2008 and required to attend a 30 day in patient
2  treatment.

3      42.    Dr. Garlick continued to declare and maintain that she had not drank alcoholic
4  beverages in violation of her agreement, but she was labeled a liar, and not believed, due to the
5  actions of both defendants in maintaining that the December 17, 2007 EtG test was proof that she
6  had drank alcohol beverages.

7      43.    Dr. Garlick continues to submit to testing and has suffered severe apprehension
8  and anxiety from the fear of again having false positive EtG testing and from the possibility of
9  suffering revocation of her license should she not be allowed to finish her probation.

10      44.    This so called "positive" EtG testing of Dr. Garlick and the injuries she suffered
11  are as a direct result of the negligence and/or recklessness of the defendants in promoting,
12  advertising, marketing, selling, and/or contracting with the licensing board, and/or designing,
13  implementing, and managing the EtG alcohol testing program, and/or collecting the urine
14  samples and/or performing and/or interpreting the EtG testing and/or utilizing the EtG test to
15  allegedly establish that the plaintiff consumed an alcohol beverage, when it lacked sufficient
16  proven specificity for use as primary or sole evidence that an individual prohibited from
17  drinking, in a regulatory context, had truly been drinking.

18      45.    The actions of the defendants in continuing to promote and utilize the EtG test
19  were in conscious disregard of the serious consequences the defendants' own use of the test had
20  already caused health care providers, including pharmacists, and specifically including the
21  plaintiff, who had been injured by the EtG testing.

22      46.    As a result of these "positive" EtG tests, Dr. Garlick was not allowed to work as a
23  pharmacist for over 13 weeks. Dr. Garlick is required to stay longer in the probation program,
24  and is required to have mandatory treatment which will prevent her from working in her job one
25  day a week for at lease one year. She also suffered damage to her reputation with consequent
26  anxiety, stress and humiliation.

27  ///
28  ///

47. As a further result of these "positive" EtG tests, Dr. Garlick suffered an additional and continuing stain on her license, and damage to her reputation and credibility in her chosen profession.

48. The additional and continuing stain on Dr. Garlick' license, her damaged reputation and credibility, the apprehension that she would again have a false positive testing, and the possible future revocation of her pharmacy license after years of education and commitment to her profession, have caused plaintiff to suffer severe emotional distress, despite her knowing that she did not drink alcoholic beverages and that these tests must have been false positives.

49. As a direct and proximate result of the defendants' conscious disregard, negligence and/or recklessness, plaintiff has suffered and/or may suffer great, permanent and irreparable harm. These injuries may include, but are not limited to: the active suspension of her license, probation, revocation of her license, loss of earnings and earning capacity, additional expenses associated with random EtG tests and other evaluations and programs, lawyers fees, other pecuniary losses flowing directly and consequentially from the EtG testing, damage to reputation, humiliation, insomnia, depression, anxiety and severe emotional and psychological distress, all or some of which are continuing in nature.

50. As a direct and proximate result of the defendants' conscious disregard, negligence and/or recklessness, plaintiff suffered damages as a result of lost earnings, costs for additional medical evaluations, treatment, program attendance and drug screenings. Her monetary losses to date since the Stipulated Settlement Agreement total approximately $87,000.00 dollars.

///
///
///
///
///
///

51.   The aforesaid conscious disregard, negligence and/or recklessness on the part of the defendants are wanton and outrageous in nature.

WHEREFORE, Plaintiff demands judgment against the Defendants for compensatory damages in an amount exceeding the jurisdictional limits for diversity, and punitive damages, plus interest and costs.

Dated: August 27, 2008

THE KANE LAW FIRM

By: _____
Steve S. Kane
Attorney for Plaintiff